UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENA ISSUED IN<br><br>*ThePLS .com, LLC. v. The National Association of Realtors*, pending in the Central District of California, Case No. 2:25-cv-05971 | **Misc No. 26-525**<br><br>**Oral Argument Requested** |
| Ashton Alexander, Robert Reffkin, and Cory Perkins,<br><br>Petitioners<br><br>-against-<br><br>The National Association of Realtors,<br><br>Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES ASHTON ALEXANDER, ROBERT REFFKIN, AND CORY PERKINS' MOTION TO QUASH SUBPOENAS ISSUED BY THE NATIONAL ASSOCIATION OF REALTORS AND REQUEST FOR SANCTIONS**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

RELEVANT BACKGROUND ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 7

I. THE SUBPOENAS ARE UNDULY BURDENSOME, OVERBROAD, AND DUPLICATIVE ........ 7

A. The Subpoenas Seek Sweeping Information of Little Relevance. ........ 7

B. The Subpoenas Seek Information That Could Have Been Obtained From a More Convenient Source or Are Duplicative. ........ 10

C. The Subpoenas Seek Information From Compass's Most Senior Executives. ........ 12

II. THE SUBPOENAS ARE RETALIATORY AND SANCTIONS SHOULD BE IMPOSED ........ 13

III. CONCLUSION AND REQUEST FOR RELIEF ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014)....................6, 8, 10

*Arminak v. Arminak & Associates LLC*,
Case No. cv 16-3382 JAK, 2017 WL 10402987 (C.D. Cal. Mar. 30, 2017)............ 12, 13, 15

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996)....................7, 8, 15

*Corbett v. eHome Credit Corp.*,
No. 10-cv-26 (JG) (RLM), 2010 WL 3023870 (E.D.N.Y. Aug. 2, 2010)....................6, 15

*Harapeti v. CBS TV Stations Inc.*,
21 Misc. 680 (PAE), (S.D.N.Y. Sept. 2, 2021)....................6

*Mattel, Inc. v. Walking Mountain Productions*,
353 F.3d 792 (9th Cir. 2003)....................6, 7, 13, 14

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005)....................6, 7

*ThePLS.com, LLC. v. The National Association of Realtors*,
Case No. 2:25-cv-05971....................1, 3, 4

**Other Authorities**

Fed. R. Civ. Proc. 26....................4

Fed. R. Civ. Proc. 45....................3, 5, 6, 7

Fed. R. Civ. Proc. 45(c)(1)....................7

Fed. R. Civ. Proc. 45(d)....................*passim*

Fed. R. Civ. Proc. 45(d)(1)....................5, 6

## INTRODUCTION

Despite the fact that Compass, Inc. ("Compass"), its executives, and its agents are not parties to and have no direct interest in the underlying action, Respondent National Association of Realtors ("NAR") has served subpoenas on three high-ranking Compass executives and three Compass-affiliated agents seeking both deposition testimony and documents. The executives who received subpoenas are Compass's CEO Robert Reffkin ("Mr. Reffkin"); Compass's Chief Strategy Officer Ashton Alexander ("Ms. Alexander"); and Compass's President of Integrated Services Cory Perkins ("Mr. Perkins," and together with Mr. Reffkin and Ms. Alexander, the "Compass Executives"). Subpoenaing six non-party witnesses, including three executives and three affiliated real estate agents, is unduly burdensome on its face. NAR further added to that burden by including with each subpoena between nine and sixteen enormously broad document requests. These requests demanded "[a]ll documents" relating to a wide swath of topics such as the executives' and agents' communications with clients and how those clients want to list their homes for sale; documents about membership in real estate trade associations; and indeed even communications with *NAR itself*—communications NAR could easily obtain from a more convenient source: its own records. NAR served these requests even though Compass had already produced more than 250 documents totaling over 1300 pages in a previous action that PLS brought against NAR but then dismissed (the "Previous Action"), and despite that NAR had the ability to use those same documents in the action underlying these subpoenas, *ThePLS.com, LLC. v. The National Association of Realtors*, Case No. 2:25-cv-05971 ("*PLS v. NAR*" or "the Underlying Action").

Further, the breadth of the subpoenas—and indeed NAR's own representations—demonstrate that NAR has no interest in any information Compass, Compass's Executives, and the Compass-affiliated real estate agents may possess. Rather, NAR's motive behind the

subpoenas seems to be retaliation against Compass for agreeing to put up even one executive for deposition testimony—even though both parties would have the opportunity to question that executive. NAR has essentially admitted that it only issued its subpoenas because ThePLS.com ("PLS") had issued a subpoena seeking deposition testimony from Mr. Reffkin. When Compass raised that it might move to quash PLS's subpoena to Mr. Reffkin, NAR seemed more than happy to drop all of the subpoenas it had issued. But when Compass proposed as a compromise position to provide Ms. Alexander as a deponent to both PLS and NAR, NAR decided that it again would try to enforce *all* of its subpoenas as to all six individuals unless Compass refused to put up *anyone* for deposition.

In short, Compass, the Compass Executives, and the Compass-affiliated real estate agents are caught in the middle of a fight that they are not a part of and have no direct interest in. Even though they have no direct interest in the case and are non-parties to the Underlying Action, Compass and the Compass Executives nonetheless tried to fulfill their obligations without being subject to undue burden. In the spirit of compromise, Compass has offered Ms. Alexander to sit for deposition for five hours, to be split equally between PLS and NAR. PLS, despite its continuing desire to depose Mr. Reffkin, has reasonably agreed to the compromise. NAR has not. NAR instead seeks to enforce all of its subpoenas as to all six witnesses, including the three Compass Executives, and continues to seek both deposition testimony and documents relating to dozens of topics. NAR's behavior is plainly at odds with Fed. R. Civ. Proc. 45(d), which states that a party issuing a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena, *particularly* when the subpoenaed party is a non-party. NAR's behavior and discovery tactics against Compass, Compass's Executives, and the Compass-affiliated agents fly directly in the face of how Fed. R. Civ. Proc. 45(d) and case law

interpreting Fed. R. Civ. Proc. 45 demand that non-parties be treated. The Compass Executives thus ask this Court to quash the subpoenas NAR has issued to them[1] and that the Court impose sanctions in the form of reasonable attorney's fees and expenses against NAR for violating Fed. R. Civ. Proc. 45(d).[2]

## RELEVANT BACKGROUND

Compass is a real estate brokerage and is a customer of both PLS and NAR-affiliated multiple listing services ("MLSs"). Declaration of Eric Fanchiang ("Fanchiang Decl.") at ¶ 3. Mr. Reffkin is Compass's Chief Executive Officer and a resident of New York City, New York. Fanchiang Decl. at ¶ 5. Ms. Alexander is Compass's Chief Strategy Officer and is also a resident of New York City, New York. Fanchiang Decl. at ¶ 6. Mr. Perkins is Compass's President of Integrated Services and is also a resident of New York City, New York. Fanchiang Decl. at ¶ 7.

According to PLS's complaint filed on July 1, 2025 in the Underlying Action, PLS sued NAR in the Central District of California alleging that NAR had violated the antitrust laws of the United States. Complaint at 1, *ThePLS.com, LLC. v. The National Association of Realtors*, Case No. 2:25-cv-05971 (July 1, 2025) (ECF No. 1). The Underlying Action appears to center around NAR's market share, control over the MLSs, and a policy promulgated by NAR called the Clear Cooperation Policy, which requires NAR members who use MLSs to submit any property that is publicly marketed to an MLS within one business day of that public marketing. *Id.* at 4. Compass understands that the Underlying Action is essentially a refiling of the Previous Action. *Id.* at 28-29. Compass, the Compass Executives, and the Compass-affiliated agents are *not*

---

[1] Ms. Alexander, Mr. Reffkin, and Mr. Perkins are all residents of New York, New York and therefore bring this Motion to Quash here. The three Compass-affiliated agents, however, are residents of Los Angeles, and thus will be bringing their own motion to quash in the Central District of California.

[2] The Compass Executives understand that fact discovery in the Underlying Action closes on November 20, 2026. The Compass Executives and NAR ask that the Court schedule oral argument at its convenience before November 20, if possible.

parties to the Underlying Action, *see id.* at 1, and Compass is not mentioned a single time in the Complaint, *see generally id*.

Compass produced over 250 documents totaling over 1300 pages in the Previous Action. Fanchiang Decl. at ¶ 8. Compass understands that those documents were made available to the parties for use in the Underlying Action. Fanchiang Decl. at ¶ 8.

While several Compass executives and agents were listed on PLS's Fed. R. Civ. Proc. 26 initial disclosures in the Underlying Action, PLS amended those initial disclosures to remove them all. Fanchiang Decl. at ¶ 9. On June 9, 2026, PLS issued a subpoena seeking the deposition of Mr. Reffkin. Fanchiang Decl. at ¶ 10. On July 20, 2026, NAR served five subpoenas to each of Ms. Alexander, Mr. Perkins, and three to Compass-affiliated agents. Fanchiang Decl., Exs. A-C, F and G. All five subpoenas sought deposition testimony. Fanchiang Decl., Exs. A-C, F and G. In addition to seeking deposition testimony, the subpoenas to Ms. Alexander and Mr. Perkins included eleven document requests. Fanchiang Decl., Exs. F at 5 and G at 5. The subpoenas to the Compass-affiliated agents included sixteen document requests. Fanchiang Decl., Exs. A at 5-6; B at 5-6; C at 5-6.

On August 12, 2026, Ms. Alexander and Mr. Perkins served objections to the subpoenas; on August 14, 2026, the three Compass-affiliated agents served objections to the subpoenas. Fanchiang Decl. at ¶ 12. On August 18, 2026, counsel for NAR and counsel for Compass met and conferred regarding the subpoenas. Fanchiang Decl. at ¶ 13. At that time, NAR agreed that the deposition dates and response dates for the subpoenas would be taken off calendar while further discussions about the NAR subpoenas were in progress. Fanchiang Decl. at ¶ 13.

On August 21, 2026, NAR served Mr. Reffkin with two subpoenas—one for deposition testimony and one for nine categories of documents. Fanchiang Decl. at ¶ 14. On September 4,

2026, counsel for Compass informed NAR that Mr. Reffkin was refusing to testify at a deposition for *either* PLS or NAR. Fanchiang Decl. at ¶ 15. NAR seemed content to drop all of its subpoenas if Mr. Reffkin was not going to testify at a deposition. Fanchiang Decl. at ¶ 15. On September 22, 2026, counsel for Compass met and conferred with NAR and informed NAR that Compass was considering offering Ms. Alexander for deposition as a compromise solution that would satisfy both PLS and Compass. Fanchiang Decl. at ¶ 16. During that call, counsel for Compass reminded NAR that Compass had previously produced over 250 documents totaling over 1300 pages in the Previous Action. Fanchiang Decl., Ex. P at 4. NAR responded that "if [Compass] intend[s] to make Ms. Alexander available for a deposition, we [will] pursue NAR's document subpoena to Ms. Alexander and the other NAR subpoenas sent to Compass representatives." Fanchiang Decl. at ¶ 16.

On October 5, 2026, Compass sent NAR a letter reminding NAR of its obligation under Fed. R. Civ. Proc. 45 to avoid undue burden. Fanchiang Decl. at ¶ 17. Compass also informed NAR that it was clear that NAR's only intent behind the subpoenas was to retaliate against Compass to ensure that *no one* from Compass would testify. Fanchiang Decl., Ex. Q at 1. On October 9, 2026, Compass sent both NAR and PLS a letter with a final offer that they were willing to have Ms. Alexander testify at a five-hour deposition with both NAR and PLS getting equal time, but would not be producing any additional documents and would not be agreeing to any other depositions because of the extreme burden. Fanchiang Decl. at ¶ 18. PLS accepted that offer. Fanchiang Decl. at ¶ 19. NAR refused. Fanchiang Decl. at ¶ 19.

## LEGAL STANDARD

Fed. R. Civ. Proc. 45(d)(1) states that a party issuing and serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the

subpoena." Fed. R. Civ. Proc. 45(d)(1). A court must enforce that duty and impose appropriate sanctions, including lost earnings and reasonable attorney's fees, on a party who fails to take such reasonable steps. *Id.*; *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003)[3] (affirming an award of attorney's fees because the subpoena was overly burdensome and served for an improper purpose). The protections of Fed. R. Civ. Proc. 45(d)(1) apply particularly strongly to non-parties—courts have stated that "special weight" is given to the burden on non-parties. *See Amini Innovation Corp. v. McFerran Home Furnishings Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (explaining that concern for the unwanted burden thrust upon non-parties is a factor entitled to "special weight" in a Rule 45 inquiry).

A determination of whether a subpoena imposes an undue burden "requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). Factors to be considered in evaluating undue burden include the relevance of the requested discovery, the need of the party for the documents, the breadth of the document request, the time period covered, and the particularity with which the documents are described. *Id.* Courts must also consider whether the discovery sought is unreasonably cumulative or duplicative or obtainable from a more convenient source. *See Amini*, 300 F.R.D. at 409, 412 n.6. Though the party seeking to quash the subpoena bears the burden of persuasion on the motion to quash, the party issuing the subpoena still must demonstrate that the discovery sought is relevant. *See Moon*, 232 F.R.D. at 637; *see also Corbett v. eHome Credit Corp.*, No. 10-cv-26 (JG) (RLM), 2010 WL 3023870, at *2-3 (E.D.N.Y. Aug. 2, 2010).

---

[3] In motions to quash, the law of the circuit in which the subpoena was issued is to be applied. *See Harapeti v. CBS TV Stations Inc.*, 21 Misc. 680 (PAE), at *2 n.2 (S.D.N.Y. Sept. 2, 2021). Here, the subpoenas were issued in the District Court for the Central District of California.

## ARGUMENT

The subpoenas issued to the Compass Executives should be quashed and sanctions issued against NAR. These subpoenas are facially unduly burdensome, overbroad, and duplicative, particularly in light of the Compass Executives' status as non-parties. Sanctions are further appropriate here because the Subpoenas are retaliatory in nature and because NAR has not complied with its obligations to reduce the burden on the non-party Compass Executives.[4]

### I. THE SUBPOENAS ARE UNDULY BURDENSOME, OVERBROAD, AND DUPLICATIVE

#### A. The Subpoenas Seek Sweeping Information of Little Relevance.

The Subpoenas are unduly burdensome and overbroad because they seek huge amounts of information that is of little relevance to the Underlying Action. The Subpoenas therefore should be quashed. It is a well-established principle that under Fed. R. Civ. Proc. 45, a party issuing a subpoena "must" take reasonable steps to avoid undue burden. Fed. R. Civ. Proc. 45(d). When weighing whether a subpoena is unduly burdensome, courts weigh the burden on the subpoenaed party against the value of the information sought and consider: the relevance of the information; the need of the party for the information; the breadth of the requests; the time period; and the particularity with which the information sought is described. *Moon*, 232 F.R.D. at 637. Sweeping requests that are "very broad" and seek "all documents" are particularly improper. *See Mattel, Inc.*, 353 F.3d at 813-14; *see also Concord Boat Corp. v. Brunswick Corp.*,

---

[4] The Compass Executives note that the original subpoenas issued to Ms. Alexander and Mr. Perkins called for their depositions to take place in Los Angeles, California. Asking Ms. Alexander and Mr. Perkins to testify in Los Angeles, California when both are residents of New York, New York would be in direct violation of Fed. R. Civ. Proc. 45(c)(1). The Compass Executives understand that if those depositions were to move forward, NAR agrees that they should take place in New York City. While the Compass Executives are not moving to quash the subpoenas on geographic grounds but reserve their right to make this argument should it be necessary for them to do so.

Similarly, the Compass Executives explicitly preserve their rights regarding documents and information protected by the attorney-client privilege, the work product privilege, or any other applicable privilege.

169 F.R.D. 44, 50 (S.D.N.Y. 1996) (stating that to the extent a subpoena "sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the great risk of 'being found overbroad and unreasonable'" (quoting *United States v. Int'l Bus. Mach. Corp*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979)). Courts regularly hold that seeking documents over a period of ten years is unduly burdensome. *See Concord Boat*, 169 F.R.D. at 52-53 (finding that requests were overbroad on their face because they sought a huge swath of documents over a ten-year period). A party's status as a non-party must also be given "special weight" when considering the burden. *See Amini*, 300 F.R.D. at 409-10.

Here, the overbreadth of the subpoenas issued by NAR is clear on their face. The subpoenas seek documents for a period of nearly ten years. Fanchiang Decl., Exs. A-C at 3 (instruction stating that the requests seek responsive documents for the period of January 1, 2017 to the present). The subpoenas also included eleven document requests for Ms. Alexander and Mr. Perkins and nine document requests to Mr. Reffkin—with the vast majority of the requests seeking "all" documents and communications relating to the request. Fanchiang Decl., Exs. F at 5, G at 5 and E at 5-6. The requests cover a huge span of expensive topics, from the Compass Executives' communications with their clients; communications with PLS; communications with NAR; communications with the Department of Justice; analyses that Compass has performed; and documents from other lawsuits Compass has brought that did not include PLS or NAR. Fanchiang Decl., Exs. F at 5, G at 5 and E at 5-6.

The document requests have little, if any, relevance to the Underlying Action. For example, the third request to Ms. Alexander and Mr. Perkins seeks "All Documents related to Your Membership in any real estate trade association." Ms. Alexander and Mr. Perkins are not real estate agents, and the trade associations they belong to are irrelevant to any issues in the

Underlying Action. Similarly, the sixth request to Ms. Alexander and Mr. Perkins seeks "All Communications with the NAR including any NAR employee or Representative." Fanchiang Decl., Exs. F at 5 and G at 5. Setting aside that NAR should *already have their own documents* (discussed further below), there is simply no reason that NAR needs *all* communications with NAR—including communications that have nothing to do with the Clear Cooperation Policy, the MLSs, or PLS. A number of the requests to Mr. Reffkin are outright fishing expeditions for information unrelated to the case. For example, the fifth request to Mr. Reffkin seeks all Documents from a wholly separate lawsuit that involved *neither PLS nor NAR*. These are just some of the most egregious examples from NAR's subpoenas—all of the document requests are repeatedly overbroad and of questionable relevance.

The request for depositions contained in the subpoenas are even worse—they seek unbound depositions with no restrictions whatsoever as to time period or subject matter. Such unbound depositions of Compass's senior-most executives are plainly improper and invite serious abuse and harassment. Setting aside that subpoenaing such senior executives, particularly a CEO, is improper and unduly burdensome already, *see infra* Section I.C, there is simply no reason that *three* senior executives need to testify. Nor is it clear what relevant information these executives may have about the Underlying Case—a case that neither they nor Compass are parties to. As discussed above, the document requests seek highly irrelevant information, and at their depositions, NAR will undoubtedly be seeking the same irrelevant information sought in the document requests.

Despite the extreme breadth and the lack of relevance of the information sought, and despite the fact that Compass and the Compass Executives are non-parties to the Underlying Action, Compass has generously agreed to have one of its senior-most executives, Ms.

Alexander, testify at a five-hour deposition. Fanchiang Decl. at ¶ 18. PLS has reasonably accepted this offer—NAR has not. Fanchiang Decl. at ¶ 19. And, as NAR recognizes, Compass previously produced hundreds of documents to the parties. Fanchiang Decl., Ex. P at 4. There is simply no reason why NAR needs additional information here. In light of the overbreadth and the lack of relevance of the information sought by NAR, Compass and the Compass Executives' status as non-parties, the documents Compass has already produced, and Compass's offer to have Ms. Alexander testify, the Subpoenas should be quashed. Sanctions should also be imposed, as NAR should have tried to reduce the burden on the Compass Executives by narrowing its discovery requests significantly before serving them or by simply accepting the fact that Compass had already produced hundreds of documents and was offering Ms. Alexander's deposition.

### B. The Subpoenas Seek Information That Could Have Been Obtained From a More Convenient Source or Are Duplicative.

NAR's subpoenas also seek duplicative information and information that could have been obtained by a party to the Underlying Action—in some instances, NAR seeks *its own records*. The subpoenas should therefore be quashed. Courts have regularly held that the burden on a non-party must be given special weight. *See Amini*, 300 F.R.D. at 409-10. Indeed, "[c]ourts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Id.* at 410. Further, discovery requests that are "unreasonably cumulative or duplicative" are improper and should be quashed. *See id.* at 409.

Here, the subpoenas are clearly duplicative. Ms. Alexander and Mr. Perkins received identical subpoenas. Fanchiang Decl., Exs. F and G at 1-5. And, while Mr. Reffkin received document requests that were worded differently than those of Ms. Alexander and Mr. Perkins, those document requests cover the exact same topics. Fanchiang Decl., Exs. E at 5-6, F at 5 and

G at 5. For example, the first request to Mr. Reffkin seeks "Documents and Communications sufficient to show Compass's approval, disapproval, prohibition, or endorsement of Compass Agents' use of any listing platform" offered by PLS. Fanchiang Decl., Ex. E at 5. The fourth document request to Ms. Alexander and Mr. Perkins calls for all documents and communications related to criticism of PLS and the seventh and eighth document requests call for all documents and communications relating to consumer, client, or agent demand for off-MLS listing services such as those offered by PLS. Fanchiang Decl., Exs. F and G at 5. These requests seek identical information.

Additionally, the subpoenas seek information that should have been sought from the parties in the Underlying Action. Perhaps most egregiously, NAR seeks from the Compass Executives documents *that NAR already has in its possession*. In its sixth document request to Ms. Alexander and Mr. Perkins, NAR seeks "All Communications" that they had "*with NAR including any NAR employee or representative*." Fanchiang Decl., Exs. F and G at 5 (emphasis added). NAR would of course already have any communications that the Compass Executives had with NAR. Similarly, the first two document requests to Ms. Alexander and Mr. Perkins seek documents related to their membership in any MLS—NAR, being the parent organization of the MLSs, would also have this information in its own records or in the records of entities that it has an affiliation with. Fanchiang Decl. Exs. F and G at 5.

NAR also seeks documents that should instead be sought from PLS, the plaintiff in the Underlying Action. For example, the ninth requests to Ms. Alexander and Mr. Perkins seek "[a]ll Communications" with a number of PLS executives." Fanchiang Decl., Exs. F and G at 5. Similarly, the second request to Mr. Reffkin seeks documents sufficient to show the number of

Compass agents that were using ThePLS.com. Fanchiang Decl., Ex. E at 5. All of these documents should have been sought from PLS.

Because the subpoenas are essentially duplicates of each other, there is simply no reason NAR should have issued all three subpoenas, especially where it already had hundreds of documents and where it was seeking documents that it already had or could have obtained from PLS. Fanchiang Decl. at ¶ 8. But just as importantly, there was and is simply no reason that NAR needs deposition testimony from *three* of Compass's senior-most executives (and three agents), particularly where Compass has already offered to provide deposition testimony from one of them. NAR has provided no reason, and cannot provide any reason, why it needs testimony from three executives, all of whom have overlapping roles and responsibilities, or why it needs *twenty-one* hours of deposition time from one company's senior-most executives. It also has provided no reason why Ms. Alexander, Compass's Chief of Strategy, is not a sufficient deponent. The depositions are plainly duplicative.

Sanctions should therefore be imposed, as at minimum NAR should have tried to get *its own documents from itself*; should have tried to get PLS's documents from the plaintiff; and should not have tried to get deposition testimonies from *three separate executives*, including Compass's senior-most executives.

**C. The Subpoenas Seek Information From Compass's Most Senior Executives.**

The Subpoenas should further be quashed because they seek the depositions of Compass's senior-most officers. Under the apex doctrine, high-ranking officers are not normally subject to deposition "absent extraordinary circumstances" because of the tremendous potential for abuse or harassment. *Arminak v. Arminak & Associates LLC*, Case No. cv 16-3382 JAK (SSx), 2017 WL 10402987, at *4 (C.D. Cal. Mar. 30, 2017). The deposition of high-ranking officers is thus only allowed when "the deponent has unique first-hand, non-repetitive knowledge

of the facts at issue in the case" *and* "the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* Courts generally refuse to allow the deposition of a high-level executive before the testimony of lower-level employees with closer knowledge of the case has been secured. *Id.*

Here, NAR subpoenaed *three* of Compass's senior-most executives, including its CEO. NAR subpoenaed Mr. Reffkin, founder and CEO of Compass; Ms. Alexander, Chief Strategy Officer of Compass; and Mr. Perkins, President of Integrated Services for Compass. Fanchiang Decl. at ¶ 5-7. As discussed above, NAR has not provided sufficient justification as to why *one* of these senior executives needs to testify in a case they are not a part of, much less why *three* senior executives, including the CEO, need to testify. Despite this lack of relevance, Compass has offered a generous compromise in agreeing to have Ms. Alexander sit for deposition. Compass has represented to NAR that Ms. Alexander would be the individual at Compass who is most likely to have knowledge about NAR's Clear Cooperation Policy. Fanchiang Decl., Ex. R at 3. NAR has not, and cannot, provide sufficient justification as to what unique information Mr. Reffkin or Mr. Perkins would have that Ms. Alexander would not be able to provide. For this reason alone, the deposition subpoenas to Mr. Reffkin and Mr. Perkins should be quashed.

## II. THE SUBPOENAS ARE RETALIATORY AND SANCTIONS SHOULD BE IMPOSED

The history of the meet and confers demonstrates that the subpoenas are retaliatory and oppressive and were served for the purpose of intimidating Compass's witnesses to not comply with PLS's subpoenas. Therefore, sanctions are appropriate. Where subpoenas are overbroad and targeted at a particular party, a court can reasonably conclude that the purpose of the subpoenas is oppressive and designed to "exert pressure on the witnesses not to testify." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming lower court's

granting of motion to quash and sanctions because the court reasonably concluded that the subpoenas were served for the purpose of annoying and harassment and not really for the purpose of getting information.) In such a situation, sanctions in the form of attorney's fees are appropriate. *See id.*

As discussed above, the subpoenas are plainly overbroad, which supports the conclusion that the subpoenas were issued to intimidate and harass rather than for the legitimate information-seeking purposes. But this is not the only fact that supports that conclusion. During the meet and confer process, NAR made it clear that if Compass were to comply with PLS's subpoenas and put up *any* witness for deposition, NAR would make Compass suffer sixfold by enforcing *all* of its subpoenas. Fanchiang Decl. at ¶ 16. Then, when Compass suggested it might fight PLS's subpoena to Mr. Reffkin, NAR seemed perfectly happy to drop all of its subpoenas. Fanchiang Decl. at ¶ 15. When Compass informed NAR that it was considering offering up Ms. Alexander for deposition as a compromise to *both* PLS and NAR, NAR immediately decided it again wanted to enforce *all* of its subpoenas. Fanchiang Decl. at ¶ 16. To this day, NAR seeks to enforce all of its subpoenas, even though Compass has reasonably offered to put up Ms. Alexander for a five-hour deposition. Fanchiang Decl. at ¶ 19.

Indeed, NAR's own words demonstrate its retaliatory intent. On September 22, 2026, NAR's counsel e-mailed counsel for the Compass Executives and directly stated "if Ms. Alexander is deposed, NAR reserves the right to pursue depositions and documents for the other Compass representatives" and further asked that "you keep us updated about PLS's plans." Fanchiang Decl., Ex. O at 1. Then, on September 28, 2026, NAR sent a letter to Compass directly stating its retaliatory intent that "if you intend to make Ms. Alexander available for a deposition, we [will] pursue NAR's document subpoena to Ms. Alexander and the other NAR

subpoenas sent to Compass representatives." Fanchiang Decl., Ex. P at 3-4. NAR has never suggested that it will drop any of its duplicative subpoenas, and indeed, continues to firmly state that if Compass provides even *one* witness to PLS, NAR will enforce *all* of its subpoenas. Fanchiang Decl., Ex. S at 1 (October 16, 2026 letter from NAR stating that "NAR will move to compel the documents and depositions it seeks if Compass stands on its unfounded, wholesale objections NAR's discovery requests *while simultaneously making a Compass witness available to PLS for a deposition*." (emphasis added)).

Again, Compass has generously offered one of its senior-most executives, Ms. Alexander, as a compromise to *both* PLS and NAR. But just one deposition of Compass's senior executives is not enough for NAR. NAR's conditions are clear—either Compass refuses to put up any witnesses at all, or NAR will inflict six times the burden on Compass. This is simply not how a non-party is to be treated under the Federal Rules. *See Arminak*, 2017 WL 10402987 at *3 (discussing the special status that a non-party has when it comes to burden); *see also Concord Boat*, 169 F.R.D. at 52 (same); *Corbett*, 2010 WL 3023870, at *3 (same). Compass thus seeks an order quashing the subpoenas issued for an improper retaliatory purpose and imposing sanctions against NAR for failing to meet its obligations of avoiding undue burden under Fed. R. Civ. Proc. 45(d).

## III. CONCLUSION AND REQUEST FOR RELIEF

As discussed above, NAR issued exceptionally broad and unduly burdensome requests, taking essentially no effort to reduce the burden despite the Compass Executives' status as non-parties. NAR also is engaging in retaliatory discovery in order to intimidate the Compass Executives and stop them from complying with PLS's subpoenas. Compass thus asks that the Court quash all subpoenas issued by NAR to the Compass Executives, except that to the extent PLS moves forward with the deposition of Ms. Alexander, during which PLS and NAR will each

be entitled to equal time at that deposition for no more than a combined five hours. Compass also asks that because of NAR's failure to comply with Fed. R. Civ. Proc. 45(d) and because of NAR's retaliatory behavior, the Court impose sanctions on NAR in the form of reasonable attorney's fees and any other relief or sanctions that the Court deems appropriate.

Dated: October 23, 2026

CROWELL & MORING LLP

*/s/ William V. Reiss*

By: *William V. Reiss*

William V. Reiss (NY Bar No. 4090379)
wreiss@crowell.com
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 223-4000

Chahira Solh (*pro hac vice* application forthcoming)
csolh@crowell.com
Eric Fanchiang (*pro hac vice* application forthcoming)
efanchiang@crowell.com
3 Park Plaza, 20th Floor
Irvine, CA 92614
(949) 263-8400

*Attorneys for Non-Parties Ashton Alexander, Robert Reffkin, and Cory Perkins*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Petitioners Ashton Alexander, Robert Reffkin, and Cory Perkins, hereby certifies that this memorandum complies with the word-count limitation of Local Rule 7.1(c).

This memorandum relies on the word count of the word-processing system used to prepare it, and contains 4,733 words, excluding the parts of the brief exempted by Local Rule 7.1(c).

Dated: October 23, 2026

CROWELL & MORING LLP

*/s/ William V. Reiss*

By: *William V. Reiss*

William V. Reiss (NY Bar No. 4090379)
wreiss@crowell.com
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 223-4000

Chahira Solh (*pro hac vice* application forthcoming)
csolh@crowell.com
Eric Fanchiang (*pro hac vice* application forthcoming)
efanchiang@crowell.com
3 Park Plaza, 20th Floor
Irvine, CA 92614
(949) 263-8400

*Attorneys for Non-Parties Ashton Alexander, Robert Reffkin, and Cory Perkins*